Good morning. May it please the Court, my name is Stuart Polinsky. I represent Patricia Kouropova, who is present in court today. I would like to reserve two minutes for any possible rebuttal. In preparing for oral argument today, I did, of course, review the record again, and the Board of Immigration Appeals said there was a substantive change in the nature of the claim. I would submit that there was no such change at all. At the 1994 hearing, Mr. Kouropova, Patricia's father, had already taken exile in Russia. He was no longer performing his work for the Katolikos in Armenia, who, by the way, passed away August of 1994. And in his testimony, page 313 of the record, he stated that he was writing articles already from Russia. I would submit to this Court that the political activity does not have to take place in Armenia itself. Today we can look at the newspaper, and all we have in Jakarta over that. I would submit that there is plenty of objective evidence that Ms. Kouropova would be in danger if she returns to Armenia. The Board has accepted her father was carjacked, her father was beaten. Ms. Kouropova herself was threatened with rape or death at gunpoint if her father didn't shut up. Counsel, the most difficult issue for me, just speaking for myself in this case, is the question of changed country conditions. And what I'm struggling with is that had your client been believed in 1994 at the original hearing, which according to the BIA's remand she should have been, is that what we should consider? Or should we consider the 2000 hearing materials as well concerning changed country conditions? In other words, what part does the delay that's been built into this case, how does that affect it? Well, Your Honor, the Board classified this as a fear of future persecution. And in the case of the first case, I would have continued to treat it that way had I had the advantage of Mimoussian at the time. I would not have done that. I would have said it's past persecution. Well, even if there is past persecution, if there are changed country conditions there's a presumption but not a certainty of future persecution or well-founded fear of future persecution. And that's why I'm asking the question. Because even if you establish past persecution, that's not the end of the road. That is true, Your Honor. Who has the burden of establishing changed country conditions? I'm sorry, Your Honor. Who has the burden of proving that country conditions have changed? If it is past persecution, there is the presumption so the burden will then be on the government. I'm unaware of any case law on who has the burden of proof when we're talking about well-founded fear. And in any case, if we come back to substantial evidence, I wouldn't say that there is evidence that the changed country conditions have been for the better. They're either the same or they're worse. The State Department in 1994 said Armenia had one of the best human rights records of any former Soviet Republic. And by the 2000 hearing, the State Department was saying the human rights record in Armenia remains poor. If there was a substantial change, it's for the worse. Doesn't that mean we have to analyze that on an individualized basis as well? Yes, Your Honor. But it was the Board itself that was looking at the generalized conditions. If we're looking at individualized, Ms. Koropova, her testimony, the testimony of her father, the testimony of Mr. Hesperian was found credible and true. In terms of the future, in terms of changed country conditions as they relate to her claim? And what is the question, Your Honor? I said, how did that testimony relate to changed country conditions as it related to her individually? Well, I know there is a body of case law that says that you cannot take the generalized and use that to make a negative credibility finding, but we don't have credibility here. So, is your argument that we just look at the country conditions report generally to see whether or not she in particular faces persecution if returned? My argument is that the Board used the country condition documentation, and accepting that argument that that is correct, then they just simply misread it. That it shows either conditions have not changed or they're even worse. But didn't the Board also say that the fact that her father had left contributed to their finding that she did not face individual persecution because she was no longer associated with her father who was there? Wasn't that part of the equation as well? That seems to be the implication, and as I stated earlier, I would say substantial evidence doesn't support that. What the objective facts show, as accepted by the Board, is that when they were both in Armenia, there were all these acts of violence. They really happened, and it was on account of. The only thing we're talking about here are the objective facts, and apparently the objective facts are limited to the background information. That's what the Board did, and like I say, accepting an arguendo, the Board just simply misread it, and substantial evidence relying upon that background material would not support their finding of substantial changes. So you're arguing future persecution based on impeded political opinion, the opinion that was held by her father, that was imputed to her, were all the reasons she was being threatened, right? Yes, Your Honor. On account of something. The on account of, and again, the Board didn't seem to, they seem to have said that it happened, it was political on account of, so we're not arguing that today. I don't have to. I thought it was a preliminary statement to my question, where I'm really going, so you don't have to argue with that. That's a statement. Okay. I'm sorry. This is where we are, okay? And there's no question, I feel that this case shows there's no question of past persecution, but somehow it's in an odd, where a presumption would arise as to the fear of future persecution, and then we look at the changed country conditions to see if that's had the effect. But you're not arguing that past persecution giving rise to a presumption? Your Honor, in the briefs, I did not do that. That is correct. If I'd had the advantage of Mimouzian, I think I would have argued differently. I see that I have a minute and a half left. You may reserve. Thank you. Good morning, Your Honors. Ari Nazaroff, representing the government. I would like to begin by answering Judge Wardlaw's question about the burden of proof. Absent of evidence of past persecution, as in this case, to prove a well-founded fear of persecution, an asylum applicant must show that his or her fear is genuine, and that a reasonable person in the same circumstances would fear persecution if returned to the applicant's native country, and that is the objective component. That's the part I don't understand about this case, because there's clearly past persecution. On the contrary, Your Honor, past persecution is not an issue because it's not been brought up before in this case. I mean, it happened, but it's not been argued as a legal theory in this case. It has not been brought up before. A petitioner in this case had a number of hearings before an immigration judge. She had a number of immigration judge decisions. She had her case heard. Past persecution never came up during any of those adjudications. The main issue in this case, Your Honor, is whether the substantial evidence supports the Board's decision in this case. Petitioner claims fear based on her father's activities. Well, her father has been living in Moscow since 1993. I didn't know that he had passed away until this morning. He had not been involved in Armenian politics. He had not been involved with the church he had previously worked for. But most importantly, country conditions have significantly changed. Counsel, that's what bothers me about this case, and if I may ask you about that. The immigration judge in this case improperly, according to the BIA itself, improperly declined to believe the applicant. She should have been believed, because the BIA ultimately said that she was credible and the immigration judge was wrong to say otherwise. So, if the immigration judge had acted properly back in 1994, at the time of the original hearing, and had he properly believed the applicant, there would not have been changed country conditions, and she would have been presumably entitled to asylum at that time. What bothers me is that because of this passage of time, now the argument is made, well, country conditions have changed, and so she's now not entitled. And I'm just troubled by that, I don't know what to call it. I'm troubled by that sequence of events, and I'm not sure there's a specific question in there, but how do we analyze a situation in which the applicant should have been believed, but wasn't at the very outset? I believe that an argument such as that was not brought up before the board. Well, I'm asking you a question about how we should analyze it. I understand that that wasn't in the briefing, but it's in my question. That's the situation that we face here, and regardless of whether the parties have talked about it, we need to figure out what to do and what's the appropriate thing to do under the statutes. Your Honor, under the statute, what's on appeal here is the board decision that's on appeal here, and that dealt with the well-founded fear of future persecution and changed country conditions since that period of time, and did the facts support the decision? Let me answer the question, because it troubles me, too. It seems as though that by virtue of the BIA's own delay, I mean, I'm not going to attribute anything malicious about this, but the fact that they happened to pick up this case again when they think country conditions have changed so that it's a situation where she can't establish her objective component of the well-founded fear, that's troublesome. However, if you don't mind answering that question, that's okay. I have a related one. It seems to me that the BIA opinion saying that country conditions have changed is just flat-out inaccurate. If you look at the 2001 State Department report, it says that the government human rights record remains poor. There are some improvements. But arbitrary arrests and detentions are still a problem. Members of the security forces routinely beat detainees during arrests and interrogation. The party about which her father was outspoken and opposed is in power. I don't see how it's changed so much that she doesn't have an objective, would not still have that objective component, which is all the change country conditions argument goes to. It doesn't go to any issue of individualized persecution. We're just looking at does she have an objective fear or have country conditions changed so much their fear is no longer objectively realistic. Your Honor, I would respond to that by saying that a standard of review in this case is a substantive evidence standard. That means that the evidence must compel a different result. The same facts, maybe you and I would not have even decided the same way, but there's no evidence that compels a different result. Also that same report on page 161 through 162 says no confirmed reports of political killings by government or agents, no reports of political motivated disappearances, and indicated that the leader of the A&M, I believe, has to resign in 1998. The A&M is in control of less than 1% of the government. The petitioner didn't bring up the standard of review, but it's very important here because the standard says not could the evidence be viewed in a different way, but must the evidence compel, and it is the government's position in this case, the petitioner has not shown how the evidence, the burden is on them, how it has compelled a different result in this case. And for those reasons, the petition for review should be dismissed. No, it's interesting. The BIA opinion does recite facts that indicate that there are some improvement. There is some improvement, but it interprets it to mean that it's improved to the point where she shouldn't have any fear objectively. I think, Your Honor, looking at the totality of the situation in this case, her father has not been in Armenia since 1993. He has been in Russia. She was never involved in any of the situations. The party she fears is no longer in power. It has less than 1% of... The president, though. I mean, the BIA says the president is of that party, the president of the country. Yeah, he does seem to have, he's part of this HHS party. He's the president. That's no power? I mean... Well, but, Your Honor, the former president who was a part of the ANM was asked to resign in 1998, and he did. And the report also says that one seat out of 131 in their Congress is controlled by the ANM party. Do you know how that works, that you could have the president of the ANM party become the president with only one seat controlled by parliament? How, in parliament, how does that work? Do you know how that works at all? I'm sorry, Your Honor, I don't. But I do know if somebody has less than 1% of the government, they're not able to do political killings, politically motivated disappearances. These type of things are not done... You know that? And it says ANM has accounts for approximately 2% of the ruling government. The BIA says that. But you know for a fact that just that fact that they only have 2% means that they can't do killings? Well, I would argue that they're not in control of the government, Your Honor, at 2% of it. I would just find it hard. I could submit a supplemental briefing, but it would be hard for me. Out of 131 seats, they have one seat that would be in control of the government. I don't know more than that, but I would find it hard to believe that they, having that, that you've done this, they'll be able to do this, Your Honor. In addition, it's approximately 13, 16 years have passed since these situations have occurred. We can't consider the mere passage of time. I'm sorry, Your Honor. In our case, we can't consider the mere passage of time. Very well, Your Honor. In particular, when it's due to the BIA itself. I think, Your Honor, the evidence in this case, looking at the totality of circumstances, does not compel a different result, and for the reasons I've stated, the decision should be for a petition for review dismissed. Thank you, Your Honor. Thank you. Thank you, counsel. Mr. Fuller, do you have about a minute and a half for remaining, Your Honor? Thank you, Your Honor. If I misspoke and said that Mr. Koropoff had passed away, I meant Noah's Baskin, the head katoliko, who passed away in 94. So her father's still alive? Her father is still alive. And he's living in Moscow? Living in Moscow, still writing. He's exiled from? Armenia. And he's still writing? That is my understanding. Still writing, you know, about what? The politics and situation and the church in Armenia. Counsel, we don't have that in the record. That is correct, Your Honor. The record cuts off at 94 about that, where he was writing from that. There is nothing in the record showing a change since then. I was answering Judge Wardlaw's question. On the substantial evidence, yes, the evidence has to be compelling, but I feel very strange in acting like a bookie that we do have the 10% rule. And I would submit that the evidence would compel a finding that there's at least a 10% chance that something will happen to Ms. Koropoff if she is forced to return to Armenia. I'm willing to submit it this time, Your Honor. Thank you, Counsel. The case just argued is submitted.
judges: Graber, Wardlaw, Rawlinson